IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| INVECTYS INC., INVECTYS USA INC., AND INVECTYS, SAS,<br><br>             *Plaintiff*,<br>    v.<br><br>NKILT THERAPEUTICS, INC., SWH CONSULTING, SASU AND SIMON WAIN-HOBSON,<br><br>          *Defendant*. | Civil Action No. 4:23-cv-4436<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

### I.    PRELIMINARY STATEMENT

1.    Plaintiff Invectys Inc., Invectys USA Inc., and Invectys, SAS (collectively "Invectys") developed—and Defendants NKILT Therapeutics, Inc. ("NKILT"), SWH Consulting, SASU, and Simon Wain-Hobson (collectively "Defendants") stole—a ground-breaking method of treating cancer. When confronted, NKILT denied the theft repeatedly—even while covertly pursuing a patent to wrongly secure for itself exclusive rights to the technology stolen from Invectys. NKILT evidently knew it was naming the wrong inventors, and to cover its tracks even changed the patent application to remove the names of two of its executives who had previously worked for Invectys. Still, that application failed to disclose the actual inventors—a pair of leading scientists who still work for Invectys, the technology's rightful owner.

2.    Invectys, founded in 2010, developed an innovative immunotherapy approach to treat cancer employing anti-HLA-G CAR-T cells to target and kill HLA-G-bearing tumor cells. Operating from its headquarters in Houston, Texas and Research & Innovation center in Paris,

through intensive research and development over many years, Invectys developed its 3rd-generation CAR construct, named IVS-3001. IVS-3001 is currently in late-stage preclinical development and was awarded a $14.2 million CPRIT grant by the Cancer Prevention and Research Institute of Texas ("CPRIT") to initiate clinical trials in 2023 against advanced carcinoma.

3.      As the co-founder, Deputy CEO and later as a consultant for Invectys, Simon Wain-Hobson enjoyed access to Invectys' confidential, proprietary, and trade secret information and know-how. For example, Simon Wain-Hobson led the presentation for Invectys to secure CPRIT funding and was intimately familiar with Invectys' anti-HLA-G CAR-T cell technology. At Invectys Simon Wain-Hobson secured access to highly specific next-generation technology for targeted cancer treatments. That proprietary confidential information included specific cell-based constructs; the particular amino-acid and nucleic acid sequences within those constructs; data demonstrating correct expression of various constructs; strategies to improve the structure, expression and efficacy of those constructs; and methods for transducing those "ILT" constructs into immune cells. Simon Wain-Hobson, however, was subject to strict confidentiality obligations, as a condition of his access to these materials.

4.      Just months after leaving Invectys, Simon Wain-Hobson and the former acting President and Chief Executive Officer of Invectys USA Inc., Raphael Ognar, founded NKILT. Using Invectys' proprietary confidential information obtained from Simon Wain-Hobson, NKILT began pursuing the same technology, applied for patents in its own name and reaped millions of dollars of investment using the confidential, proprietary, and trade secret information and know-how. Invectys has filed this lawsuit to stop NKILT's ongoing trade secret theft and to secure compensation for the damage done to Invectys.

5.      This is not a case about incidental use of peripheral information.  Simon Wain-Hobson and Raphael Ognar, both former Invectys corporate officers, founded NKILT to capitalize on Invectys' proprietary, and trade secret information and know-how—closely guarded technical inside information that is not generally known in the industry or readily ascertainable, but rather the product of confidential research and development over many years.

## II.    PARTIES

6.      Plaintiff Invectys Inc. is a Delaware Corporation with its principal place of business at 109 N. Post Oak Lane, Ste 600, Houston, Texas.

7.      Plaintiff Invectys USA Inc. is a Delaware Corporation with its principal place of business at 109 N. Post Oak Lane, Suite 600, Houston, Texas.

8.      Plaintiff Invectys, SAS is a French Corporation with its principal place of business at Paris Biopark, 12 rue Jean Antoine de Baif, 75013, Paris, France.

9.      Defendant NKILT Therapeutics, Inc. is a Delaware Corporation with its principal place of business at 2710 Reed Road, Suite 160, Houston, Texas.

10.     SWH Consulting, SASU is a French single shareholder simplified joint-stock company with its principal place of business at 3 Rue Jean de la Fontaine, 78180 Montigny le Bretonneux, France.  Defendant Simon Wain-Hobson is the sole shareholder in SWH Consulting, SASU.

11.     Defendant Simon Wain-Hobson resides at 3 Rue Jean de la Fontaine, 78180 Montigny le Bretonneux, France.

## III.    JURISDICTION AND VENUE

12.     This court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1331, as Invectys's claims arise under federal statute, the Defend Trade Secrets Act of 2016 (18 U.S.C. § 1836 *et seq.*) and 35 U.S.C. § 256.  This Court also has supplemental jurisdiction

over state and common law claims under 28 U.S.C. § 1367(a) because those claims are so closely related to claims in the action within the Court's original jurisdiction that they form part of the same case or controversy and therefore make the Court's exercise of supplemental jurisdiction appropriate.

13.    This Court has specific jurisdiction over NKILT under Section 17.042 of the Texas Civil Practice and Remedies Code because NKILT has sufficient minimum contacts with the State of Texas and purposefully availed itself of the privilege of conducting activities in the State of Texas, by, among other actions, registering to conduct business in the State of Texas, maintaining its principal place of business at 2710 Reed Road, Suite 160, Houston, Texas, committing torts against Invectys and violating the DTSA in Texas as described herein.  This Court has personal jurisdiction over NKILT because the causes of action asserted in this Complaint against it relate to, and arise from, its contacts with Texas.  Furthermore, NKILT conducts business in this state and maintains its principal place of business at 2710 Reed Road, Suite 160, Houston, Texas. Accordingly, this Court's exercise of personal jurisdiction over NKILT does not offend traditional notions of fair play and substantial justice.

14.    This Court has specific jurisdiction over SWH Consulting, SASU under Section 17.042 of the Texas Civil Practice and Remedies Code because SWH Consulting, SASU has sufficient minimum contacts with the State of Texas and purposefully availed itself of the privilege of conducting activities in the State of Texas, by, among other actions, committing torts against Invectys and violating the DTSA in Texas as described herein.  This Court has personal jurisdiction over SWH Consulting, SASU because the causes of action asserted in this Complaint against it relate to, and arise from, its contacts with Texas.  Furthermore, SWH Consulting, SASU has purposefully availed itself of the benefits and protections of the forum state's laws by entering into

a Consulting Agreement and a Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement with Invectys, both of which state that the Agreement shall be governed by Texas law. *See* **Ex. 1**, § 8(a), Ex. B § 14.1. In addition, the Consulting Agreement states "[t]he exclusive venue and jurisdiction for any disputes shall be the State of Texas and the Parties each hereby waive any claims of inconvenient forum with respect thereto." **Ex. 1**, § 11A. Accordingly, this Court's exercise of personal jurisdiction over SWH Consulting, SASU does not offend traditional notions of fair play and substantial justice.

15.     This Court has specific jurisdiction over Simon Wain-Hobson under Section 17.042 of the Texas Civil Practice and Remedies Code because Simon Wain-Hobson has sufficient minimum contacts with the State of Texas and purposefully availed himself of the privilege of conducting activities in the State of Texas, by, among other actions, conducting business through his company, NKILT, and committing torts against Invectys and violating the DTSA in Texas as described herein. This Court has personal jurisdiction over Simon Wain-Hobson because the causes of action asserted in this Complaint against it relate to, and arise from, its contacts with Texas. Furthermore, Simon Wain-Hobson has purposefully availed himself of the benefits and protections of the forum state's laws by entering into a Consulting Agreement and a Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement with Invectys, both of which state that the Agreement shall be governed by Texas law. *See* **Ex. 1**, § 8(a), Ex. B § 14.1. In addition, the Consulting Agreement states "[t]he exclusive venue and jurisdiction for any disputes shall be the State of Texas and the Parties each hereby waive any claims of inconvenient forum with respect thereto." **Ex. 1**, § 11A. Accordingly, this Court's exercise of personal jurisdiction over Simon Wain-Hobson does not offend traditional notions of fair play and substantial justice.

16.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1), because NKILT is a Delaware corporation having a principal place of business at 2710 Reed Road, Suite 160, Houston, Texas and has committed torts against Invectys and violated the DTSA in this district.

17.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1), because SWH Consulting, SASU is not resident in the United States, and therefore pursuant to 28 U.S.C. § 1391(c)(3), SWH Consulting, SASU "may be sued in any judicial district[.]"  In addition, SWH Consulting, SASU has committed torts against Invectys and violated the DTSA in this district.

18.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1), because Simon Wain-Hobson is not resident in the United States, and therefore pursuant to 28 U.S.C. § 1391(c)(3), Simon Wain-Hobson "may be sued in any judicial district[.]"  In addition, Simon Wain-Hobson has committed torts against Invectys and violated the DTSA in this district.

## IV.    APPLICABLE FACTS

### A.    Invectys and its Revolutionary Technology

19.     Founded in 2010, Invectys is a biopharmaceutical company focused on the development of innovative immunotherapy approaches to treat cancer.  Invectys has headquarters in Houston, Texas and a Research & Innovation center in Paris.

20.     Invectys employs a novel approach to mobilizing and restoring the anti-tumor capacity of the immune system of cancer patients.  This approach allows potentially all cancers to be targeted.  One of two platforms Invectys focuses its efforts on is HLA-G, which is a powerful immune checkpoint (i.e., a regulator of the immune system) and a tumor-specific antigen.

21.     Immune checkpoints are a normal part of the immune system.  Their role is to prevent the immune system from destroying healthy cells in the body.  Immune checkpoint proteins on the surface of immune cells called T cells recognize and bind to partner proteins on

6

other cells.  When the checkpoint and partner proteins bind together, they send an "off" signal to the T cells.  Under normal circumstances immune checkpoints act as safeguards to ensure the immune system does not mistakenly target healthy cells.

22.    HLA-G is a powerful immune checkpoint that is normally expressed only at the fetal-maternal interface, where it protects the fetus from the maternal immune system.  In the absence of HLA-G expression the father's antigens carried by the fetus would be recognized as foreign by the mother's immune system and thus destroyed.  HLA-G expression on the placenta prevents the mother's immune system from attacking the fetus by shutting down any immune response towards the fetus.

23.    After birth HLA-G is rarely expressed in healthy tissues but is frequently expressed on tumors.  Cancerous tumors express HLA-G to evade the body's immune response.

24.    HLA-G exerts its immunosuppressive effects through its interactions with 2 main inhibitory receptors: ILT2 and ILT4.  Binding of HLA-G to ILT2 and ILT4 leads to the inhibition of all immune cell subsets and the induction of suppressive immune cells.  When expressed by tumor cells, HLA-G exerts the same functions and efficiently protects them against destruction.

25.    Invectys has developed constructs allowing anti-HLA-G chimeric antigen receptor (CAR) T cells to target and kill HLA-G-bearing tumor cells.  CARs are artificial receptors, derived from monoclonal antibodies specific to a tumor antigen, such as HLA-G, which are transduced into T-cells to redirect these cells to cells expressing the tumor antigen.  In practice, CD8+ T cells are first isolated from a patient and modified to express the CAR directed against said patient's tumor marker.  The modified T cells (now called CAR-T cells, or CAR-Ts) are then reinjected into the patient and will seek and destroy the cells displaying the targeted antigen.  For this reason, it is crucial to have a tumor specific antigen not expressed on healthy cells to avoid side effects.

26.     Invectys' first in class CAR-T cells utilize engineered single chain fragments (scFv) from monoclonal antibodies designed to recognize HLA-G bearing cells.  Because HLA-G is expressed by many types of tumor cells but few healthy cell types, Invectys' HLA-G CAR-T cells are able to specifically target tumor cells, while avoiding healthy cells.  This is a major technical advance, paving the way for more targeted treatments.

27.     Invectys' 3rd-generation CAR construct, named IVS-3001, is currently in late-stage preclinical development, and was granted a $14.2 million CPRIT funding by the State of Texas to initiate clinical trials in 2023 against advanced carcinoma.

28.     Invectys' CAR-T cell projects have also received awards from multiple independent organizations: Cancer Prevention Research Institute of Texas award 2020, "Best Project" award at the MATWIN 2019 competition, CAR-T poster selected for top 10 at ESMO Immuno Oncology, Geneva, December 2019, and Awarded by the EU-funded (France, Germany, Italy & United Kingdom) collaborative research project CARAT (Chimeric Antigen Receptors for Advanced Therapies).

29.     Invectys also began developing chimeric ILT receptors (CIRs) to target HLA-G bearing cells in parallel with its anti-HLA-G CAR-T cell platform.  Invectys' anti-HLA-G CAR-T cell platform incorporates fragments of antibodies to target HLA-G, whereas the CIR platform utilizes the ligand-receptor interactions between HLA-G and ILT2 and ILT4 to target tumor cells.

30.     Specifically, Invectys scientists, Julien Caumartin and Maria Loustau conceived and developed (1) cell-based constructs comprising the D1 and D2 domains of the ILT2 and ILT4 receptors, including specific amino-acid and nucleic-acid sequences; (2) data demonstrating correct expression of various constructs; (3) methods and strategies to improve the structure,

expression and efficacy of those constructs; and (4) methods for transducing those "ILT" constructs into immune cells.

31.     Dr. Julien Caumartin is Invectys' Chief Scientific Officer and Dr. Loustau is Invectys' Research and Development Director.  They are recognized leaders in the field.  They are also the named inventors on multiple patents involving antibodies and antigens.

32.     Drs. Caumartin and Loustau's Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement provide that any inventions conceived in the scope of their employment are the property of Invectys.  Those standard assignment agreements from Invectys' employees provide to Invectys ownership rights over the technology at issue.

33.     Additionally, Simon Wain-Hobson and Raphael Ognar agreed to assign such inventions to Invectys by entering into Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreements with Invectys as a condition of their employment. **Ex. 1**, Ex. B; **Ex. 2**, Ex. B.   Simon Wain-Hobson's Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement states "I hereby assign to [Invectys] any rights I may have or acquire in such Proprietary Information and recognize that all Proprietary Information shall be the sole property of [Invectys] and its assigns."  **Ex. 1**, Ex. B at § 1.2. Simon Wain-Hobson's Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement further requires him to "assign, grant and convey to [Invectys] all my right, title and interest in and to any and all Inventions (and all Proprietary Rights with respect thereto) whether or not patentable or registrable under copyright or similar statutes, made or conceived or reduced to practice or learned by me, either alone or jointly with others, during the period of my engagement with the [Invectys]."  **Ex. 1**, Ex. B at § 2.  Raphael Ognar's Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation

Agreement similarly requires he "hereby assign (or, for future inventions, agree to assign) to [Invectys], or its designee, all my right, title, and interest in and to any and all inventions, original works of authorship, writings, developments, concepts, improvements, designs, discoveries, ideas, processes, formulas, data, trademarks or trade secrets, whether or not patentable or registrable under copyright or similar laws, which I may solely or jointly conceive or develop or reduce to practice within the scope of my engagement, or cause to be conceived or developed or reduced to practice, during the period of time I am engaged by [Invectys]." **Ex. 2**, Ex. B at § 2(b).  Simon Wain-Hobson's Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement further requires him to "execute, verify and deliver assignments of such Proprietary Rights to the Company or its designee, …" **Ex. 1**, Ex. B at § 2.7.  Raphael Ognar's Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement similarly requires him to "assist [Invectys], or its designee, at [Invectys'] expense, in every proper way to secure the [Invectys'] rights in the Inventions and any copyrights, patents, mask work rights or other intellectual property rights relating thereto in any and all countries, including . . . , the execution of all applications, specifications, oaths, assignments and all other instruments which [Invectys] shall deem necessary in order to apply for and obtain such rights and in order to assign and convey to [Invectys], its successors, assigns, and nominees the sole and exclusive rights, title and interest in and to such Inventions, and any copyrights, patents, mask work rights or other intellectual property rights relating thereto." **Ex. 2**, Ex. B at § 2I.  Thus, to the extent Simon Wain-Hobson and Raphael Ognar have any right, title, or interest in the technology at issue they are obligated to assign that right, title, or interest to Invectys.

B.    **Simon Wain-Hobson's Acquisition of Confidential Information and Trade Secrets from Invectys**

34.    Simon Wain-Hobson served on the Invectys SA Board of Directors from its inception through June 30, 2021, when Invectys SA was converted to Invectys SAS.

35.    On June 1, 2020, Invectys Inc. entered into a Consulting Agreement with SWH Consulting, SASU, a French corporation, represented by and through Simon Wain-Hobson, for the performance of certain services.  *See* **Ex. 1**.  These services included consulting, training, teaching, and presentation of projects; participation in capital raising and grants in the fields of life sciences; supporting the Invectys' grant from the Cancer Prevention and Research Institution of Texas; and provision of advice in the areas of molecular biology, oncology, and immunology.  *See id.*, Ex. A.  Under the agreement, performance of the agreed upon services would be conducted solely by Simon Wain-Hobson.  *See id.*, § 1.  In conjunction with the Consulting Agreement, Simon Wain-Hobson also executed a Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement.  *See id.*, Ex. B.  The Consulting Agreement between Invectys and Simon Wain-Hobson was effective from June 1, 2020, through April 30, 2021.  *See id.*, § 2.

36.    At the time Invectys Inc. entered into the Consulting Agreement, Simon Wain-Hobson also served on the Invectys SA Board of Directors.  The Consulting Agreement notes that Simon Wain-Hobson also acknowledged "his fiduciary duty as a Board member and his obligation to act in the best interests of the Company." **Ex. 1**., § 1.

37.    Simon Wain-Hobson, through his roles as co-founder, board member and consultant to Invectys, enjoyed access to proprietary, confidential, trade secret information regarding the development of its CIR platform.  For example:

- On April 22, 2016, Simon Wain-Hobson attended a meeting, where, as evidenced by contemporaneous documents, Invectys scientists presented to Simon Wain-Hobson information about a new cell-based construct that used the D1 and D2 domains of the ILT2 and ILT4 receptors.  The three individuals agreed that following an official first proposal by the Invectys scientists, this ILT construct would be "validated by Simon Wain-Hobson".

- Five days later, on April 27, 2016, the same Invectys scientists presented to Simon Wain-Hobson further developments regarding this ILT construct and the group discussed ways to improve the structure and expression.

- On April 28, 2016, Simon Wain-Hobson, along with the Invectys scientists, discussed a construct employing D1D2 binding domains or paratopes.  They agreed to evaluate this new strategy and present conclusions and define the material to be ordered.  They also agreed to "define the organizational chart and [their] objectives and responsibilities which will allow, among other things, the distribution of experiments."

- In September 2016, one of the Invectys scientists demonstrated to Simon Wain-Hobson how transductions were ongoing on different types of immune cells.

- In March 2018, Simon Wain-Hobson reviewed—and even redlined—yet another presentation reflecting Invectys' advances with, *inter alia*, D1D2 ILTs.

- In June 2018, Simon Wain-Hobson obtained and commented on materials setting forth the Invectys' research strategies for curing cancer, including its use of "Non-classical anti-HLA-G CAR cells: D1D2 ILTs," i.e., Chimeric ILT.

- In April 2019, Simon Wain-Hobson joined—and praised as "excellent"—an Invectys presentation describing inter alia the Company's work with "ILT2 receptors."

38.     Ultimately, this Invectys information regarding CIR constructs became the backbone of Simon Wain-Hobson's next venture, NKILT.

39.     Simon Wain-Hobson was exposed to Invectys' confidential, non-public research information and trade secrets—valuable information that was neither generally known, nor readily ascertainable through proper means by others.   That information includes confidential, misappropriated trade secret information such as: (1) cell-based constructs comprising the D1 and D2 domains of the ILT2 and ILT4 receptors, including specific amino-acid and nucleic-acid sequences; (2) data demonstrating correct expression of various constructs; (3) methods and strategies to improve the structure, expression and efficacy of those constructs; and (4) methods for transducing those "ILT" constructs into immune cells.

**C.      Invectys Takes Reasonable Measures to Protect Its Trade Secrets and Confidential Information**

40.     Given the sensitive and proprietary nature of the sequences and structure of its constructs, Invectys has and continues to take care to protect its trade secrets and confidential information.

41.     Invectys has expended significant time, effort, and expense developing its HLA-G targeting platforms.  Invectys' financial success and ability to develop ground-breaking cancer therapeutics hinges on its confidential information and trade secrets, and a competitor acquiring such information would gain a tremendous unfair advantage.   Invectys, therefore, treats its proprietary information and trade secrets as highly confidential and vigorously safeguards such information, files, and documents as trade secrets.  Invectys' confidential information and trade secrets are not readily available to the public, nor readily ascertainable.

42.     Invectys has implemented measures to preserve and protect the confidentiality of its confidential information and trade secrets, such as requiring employees and consultants sign

confidentiality or non-disclosure agreements and Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreements; having third parties, with whom Invectys may discuss confidential information, sign confidential or non-disclosure agreements; labeling slide decks and presentations as confidential; limiting access to confidential information on the Invectys network; requiring passwords to login to the Invectys network, filing patents as soon as data is available; and aggressively seeking prosecution of those who steal Invectys confidential information.

43.     It is imperative that Invectys' confidential information and trade secrets be kept in strict confidence.  Otherwise, Invectys loses its viability to compete in the marketplace.  Simon Wain-Hobson acknowledged as much when as a condition to his employment, he signed a Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement.  *See* **Ex. 1**, Ex. B.  That agreement required him to, during his engagement and thereafter, "hold in strictest confidence and […] not disclose, use, lecture upon or publish any of the Company's Proprietary Information, except as such disclosure, use or publication may be required in connection with [his] work for the Company, or unless an authorized officer of the Company expressly authorizes such in writing."  *Id.*, Ex. B at § 1.2.  Instead, he took Invectys' confidential information with, for, and on behalf of his new company, NKILT.

44.     The Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement explicitly applies to Invectys Proprietary Information previously disclosed to Simon Wain-Hobson, as well as Invectys Proprietary Information Simon Wain-Hobson learned during the term of the consulting agreement.  Specifically, the "Agreement sets forth the terms and conditions of [Invectys'] agreement to provide [Simon Wain-Hobson] *access to and use of its Proprietary Information and/or [his] continued access to and use of that information and*

14

*Specialized Training*." *Id.*, Ex. B at § 1.1 (emphasis added). The Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement defines Proprietary Information as "all confidential and/or proprietary knowledge, data or information of [Invectys], its affiliates, parents and subsidiaries, *whether having existed, now existing, or to be developed during my engagement*." *Id.*, Ex. B at § 1.3 (emphasis added). Thus, the terms of the Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement apply to the confidential information he learned (and stole) from Julien Caumartin and Maria Loustau relating to (1) cell-based constructs comprising the D1 and D2 domains of the ILT2 and ILT4 receptors, including specific amino-acid and nucleic-acid sequences; (2) data demonstrating correct expression of various constructs; (3) methods and strategies to improve the structure, expression and efficacy of those constructs; and (4) methods for transducing those "ILT" constructs into immune cells.

45.    The Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement further required that for a period of one year after the date of the termination of the agreement Simon Wain-Hobson would not "directly or indirectly, as an officer, director, employee, consultant, owner, manager, member, partner, or in any other capacity solicit, perform, or provide, or attempt to perform or provide Conflicting Services anywhere in the world where [Invectys] is conducting or is planning to conduct business, including but not limited to locations where [Invectys] performs research or development activities related to Invectys' products, services or processes." **Ex.1**, Ex. B at § 6. Simon Wain-Hobson further agreed that he would not "assist another person to solicit, perform or provide or attempt to perform or provide Conflicting Services anywhere in the world where [Invectys] is conducting or is planning to conduct business, including but not limited to locations where [Invectys] performs research or

development activities related to [Invectys'] products, services or processes." *Id.* Conflicting Services are defined by the Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement as "any product, service, or process or the research and development thereof, of any person or organization other than [Invectys] that is substantially similar to or competitive with a product, service, or process, including the research and development thereof, of [Invectys] with which I worked directly or indirectly during my engagement by [Invectys] or about which I acquired Proprietary Information during my engagement by [Invectys]." *Id.* In direct contravention of the non-compete provisions of Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement Simon Wain-Hobson formed NKILT in July 2021 to develop, perform and provide cell-based constructs comprising the D1 and D2 domains of the ILT2 and ILT4 receptors, methods and strategies Io improve the structure and expression of those constructs and methods for transducing those "ILT" constructs into immune cells for the purpose of developing cancer therapeutics.

### D. Simon Wain-Hobson Founded NKILT Based on Invectys' Trade Secrets

46.     In July of 2021, just two and a half months after the end of his consulting agreement with Invectys, Simon Wain-Hobson co-founded NKILT with former Invectys USA Inc. acting president and CEO, Raphael Ognar.

47.     Evidently using Invectys' confidential information and trade secrets, Simon Wain-Hobson and NKILT began actively raising funds in April 2022.

48.     On March 30, 2023, Raphael Ognar, NKILT co-founder and former Invectys consultant and CEO, gave a presentation outlining NKILT's development of chimeric ILT-Receptor technology to target HLA-G for the purpose of treating cancers. At the same conference, NKILT presented a poster titled "Harnessing Chimeric ILT-Receptor (CIR) Binding Technology

to Target the HLA-G Pathway for Fit-for-Purpose Activation of NK Cells" and listing Simon Wain-Hobson as an author.

49.    NKILT and Simon Wain-Hobson's poster outlines how certain constructs use the D1 and D2 domains of ILT2 and ILT4 receptors to target tumor cells expressing HLA-G— precisely the same domains disclosed to Simon Wain-Hobson on April 22, 2016, by Invectys scientists for the purpose of targeting HLA-G expressing tumor cells.  *See* ¶ 37 above.

50.    NKILT and Simon Wain-Hobson's poster further outlines how NKILT's constructs were transfected into immune cells.

51.    NKILT and Simon Wain-Hobson used confidential information and trade secrets Simon Wain-Hobson acquired from Invectys, to develop their "Chimeric ILT-Receptor (CIR) Binding Technology."

### E.    NKILT Filed Patent Applications Based on Invectys' Confidential Information and Trade Secrets.

52.    NKILT and Simon Wain-Hobson have disclosed their improper acquisition and use of Invectys confidential information and trade secrets in patent filings.

53.    On February 4, 2022, NKILT filed U.S. Provisional Patent Application No. 63/306,514 (the "'514 Application"), titled "Genetically Modified Cells Expressing a Chimeric ILT Receptor."  The '514 Application lists Joseph Henri Bayle, Simon Wain-Hobson, Raphael Ognar and Duong MyLin as the purported inventors, though they were no such thing—the novel contribution had been made by, and stolen from, Invectys.

54.    On February 3, 2023, NKILT filed PCT/US2023/061966 claiming priority to the '514 Application.  The PCT application published on August 10, 2023, as International Publication No. WO 2023/150698 A2 (the "'698 Publication).  The '698 Publication is titled "Chimeric ILT Receptor Compositions and Methods" and lists only Joseph Henri Bayle and Duong MyLin as

17

inventors.  NKILT thus attempted to hide Wain-Hobson and Ognar's involvement in acquiring the relevant technology, even while admitting they were *not* the true inventors.  Nor are Bayle and MyLin the correct inventors; NKILT is seeking to capitalize on proprietary technology that was invented by Invectys' scientists and properly owned by Invectys.

55.    The '698 Publication contains a single independent claim reciting:

1. A chimeric receptor protein, comprising:

(a) a targeting region, that targets HLA-G, comprising a D1-D2 extracellular domain of immunoglobulin-like transcript 2 (ILT2) or immunoglobulin-like transcript 4 (ILT4);

(b) a transmembrI(TM) region, comprising a transmembrane amino acid sequenI and

(c) an intracellular domain (ICD), comprising a signaling region capable of transducing a signal, upon binding of said targeting region to HLA-G, into the interior of an immune effector cell to elicit effector cell function.

56.    Independent claim 1 of the '698 Publication describes the cell-based constructs comprising the D1 and D2 domains of the ILT2 and ILT4 receptors developed by Invectys scientists, Julien Caumartin and Maria Loustau.  As shown below, in a schematic from an Invectys document authored in 2016, Invectys developed constructs comprising the D1 and D2 extracellular domains of ILT2.  Defendants improperly used this, in claim 1 of the subsequent '698 Publication. The Invectys CIR-ILT2 schematic shows an ILT2 chimeric receptor protein, comprising "a targeting region, that targets HLA-G, comprising a D1-D2 extracellular domain of immunoglobulin-like transcript 2 (ILT2)" (i.e., ILT2-Domaine1 and ILT2-Domaine2), as recited by element [a] of claim 1 of the '698 Publication.  The Invectys CIR-ILT2 schematic also shows an ILT2 chimeric receptor protein, further comprising  "a traImbrane (TM) region, comprising a transmembrane amino acid sequence" (i.e., CD28-Transmembrane), as recited by element [b] of claim 1 of the '698 Publication.  In addition, the Invectys CIR-ILT2 schematic also shows an ILT2

chimeric receptor protein, further comprising "an intracellular domain (ICD), comprising a signaling region capable of transducing a signal, upon binding of said targeting region to HLA-G, into the interior of an immune effector cell to elicit effector cell function" (i.e.,. CD-28-cytodomaine, 41BB cytodomain, and CD3z-cytodomaine), as recited by element [c] of claim 1 of the '698 Publication.  Thus, the Invectys CIR-ILT2 schematic demonstrates that Invectys, as opposed to NKILT, developed the subject matter of claim 1 of the '698 Publication as early as 2016.



57.    As shown below, in addition to the ILT2 constructs described above, a schematic from a March 2, 2018 internal Invectys presentation by Invectys scientists Julien Caumartin and Maria Loustau demonstrates that, Invectys also developed ILT4 constructs.   Defendants improperly used this, too, in claim 1 of the subsequent '698 Publication.  The Invectys CIR-ILT4 schematic shows an ILT4 chimeric receptor protein, comprising "a targeting region, that targets HLA-G, comprising a D1-D2 extracellular domain of immunoglulin-like transcript 2 (ILT4)" (i.e., ILT4 Domains D1 and D2), as recited by element [a] of claim 1 of the '698 Publication.  The Invectys CIR-ILT4 schematic also shows an ILT4 chimeric receptor protein, further comprising a "aInsmembrane (TM) region, comprising a transmembrane amino acid sequence" (i.e., CD28-Transmembrane), as recited by element [b] of claim 1 of the '698 Publication.  In addition, the Invectys CIR-ILT4 schematic also shows an ILT2 chimeric receptor protein, further comprising "an intracellular domain (ICD), comprising a signaling region capable of transducing a signal, upon binding of said targeting region to HLA-G, into the interior of an immune effector cell to

elicit effector cell function" (i.e., CD-28, 4-1BB, and CD3z), as recited by element [c] of claim 1 of the '698 Publication.  Thus, the Invectys CIR-ILT4 schematic demonstrates that Invectys, as opposed to NKILT, developed the subject matter of claim 1 of the '698 Publication as early as 2018.



58.    As discussed above in Section IV.B, Simon Wain-Hobson reviewed—and indeed redlined—Julien Caumartin and Maria Loustau's presentation on March 1, 2018.  The page of Julien Caumartin and Maria Loustau's presentation containing the CIR-ILT4 schematic is clearly marked "CONFIDENTIAL," thus Simon Wain-Hobson was well aware that information regarding Invectys' CIR-ILT4 constructs was to be kept confidential.

59.    As shown by the Invectys CIR-ILT2 and Invectys CIR-ILT4 schematics, above, Simon Wain-Hobson and NKILT learned all inventive aspects described and claimed in PCT/US2023/061966 (published as the '698 Publication) from Invectys.  Accordingly, Julien Caumartin and Maria Loustau are the true inventors of the PCT/US2023/061966.

**F.      NKILT's wrongful conduct has harmed Invectys.**

60.     Invectys invested significant time, effort and resources creating constructs to target and kill HLA-G-bearing tumor cells.  NKILT capitalized on such time, effort, and resources— through misappropriation of Invectys confidential information and trade secrets from Simon Wain-Hobson—to apply for patents and to establish and acquire funding for NKILT that would have otherwise gone to Invectys.

## V.    CAUSES OF ACTION

61.     Based on the factual allegations in this Complaint, Invectys asserts the following causes of action against NKILT:

**COUNT I – Violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 *et seq.***

62.     Invectys incorporates by reference the preceding paragraphs in the Complaint.

63.     Invectys owns and possesses certain confidential, proprietary, and trade secret information and know-how regarding: (1) cell-based constructs comprising the D1 and D2 domains of the ILT2 and ILT4 receptors, including specific amino-acid and nucleic-acid sequences; (2) data demonstrating correct expression of various constructs; (3) methods and strategies to improve the structure, expression and efficacy of those constructs; and (4) methods for transducing those "ILT" constructs into immune cells.  Simon Wain-Hobson obtained this confidential, proprietary, and trade secret information and know-how from Invectys.  Simon Wain-Hobson and NKILT disclosed or used Invectys' confidential, proprietary, and trade secret information and know-how to obtain funding and apply for patent applications, among other things, without express or implied consent from Invectys.   These methods, processes, technological advancements and achievements have substantial independent value as a result of being secret because they afford the holder commercial advantages and a head start in the global cancer therapeutics market.  If other competitors obtained such information (as Simon Wain-

Hobson did), they would be far more capable of competing without a commensurate investment of time and money. NKILT secured a "free ride" because it did not need to invest in the research and development that Invectys performed to develop its confidential trade secret information in order to patent the inventions, secure investment, and promote its products. Thus, through its acquisition of Invectys' confidential and proprietary information from Simon Wain-Hobson, NKILT has secured an unfair and highly profitable advantage in a competitive market.

64.    NKILT intends sell and market its Chimeric ILT-Receptor (CIR)-NK cells in interstate commerce and worldwide to cancer patients and healthcare providers, and to secure investment, based on the stolen technology, through interstate commerce.

65.    Invectys has taken reasonable measures to maintain its trade secrets in confidence and to prevent their disclosure to or use by unauthorized persons, including having employees and consultants sign confidentiality or non-disclosure agreements and proprietary inventions and assignment agreements; having third parties, to whom confidential information may be disclosed, sign confidential or non-disclosure agreements; labeling slide decks and presentations as confidential; limiting access to confidential information on the Invectys network; requiring passwords to login to the Invectys network, filing patents as soon as data is available; and aggressively seeking prosecution of those who steal Invectys confidential information. Invectys is a private company developing cancer therapeutics for patients both inside and outside the United States.

66.    The conduct described in the foregoing paragraphs, including filing multiple patent applications and acquiring funding on the back of technology stolen from Invectys, constitutes "actual" trade secret misappropriation by Defendants under the DTSA. *See* 18 U.S.C.

§§ 1836(b)(3).  Given the wealth of material Simon Wain-Hobson obtained, and the ongoing nature of Defendants' conduct, Invectys also faces "threatened" trade secret misappropriation.  *Id.*

67.    Invectys has been and is being irreparably harmed by Defendants' misappropriation of its trade secrets.  Without injunctive relief, Invectys will continue to be irreparably harmed by Defendants' misappropriation of its trade secrets, including by NKILT's patenting, developing, and commercializing its "Chimeric ILT-Receptor (CIR) Binding Technology."

68.    Invectys is entitled to injunctive relief set forth in its Prayer for Relief to prevent Defendants' continued misappropriation of its trade secrets.  *See* 18 U.S.C. §§ 1836(b)(3)(A).

69.    Simon Wain-Hobson's misappropriation of Invectys' trade secrets, as an insider with full knowledge of the information's confidential nature was willful and malicious.

70.    NKILT knew or should have known of Simon Wain-Hobson's improper acquisition and use of Invectys' trade secrets, not least because he co-founded the company with Raphael Ognar, a former Invectys consultant and CEO.  NKILT knowingly and maliciously acquired said trade secrets for its own benefit.

71.    Invectys is entitled to damages and the attorneys' fees that it incurs in this action.  Invectys is also entitled to exemplary damages pursuant to 18 U.S.C. § 1836.

**COUNT II – Violation of Texas Uniform Trade Secrets Act**

72.    Invectys incorporates by reference the preceding paragraphs in the Complaint.

73.    This cause of action is brought by Invectys against Defendants under the Texas Uniform Trade Secrets Act ("TUTSA"). TEX. CIV. PRAC. & REM. CODE ANN. §§ 134A.001– 134A.008.

74.    47.    Invectys owns and possesses certain confidential, proprietary, and trade secret information and know-how regarding: (1) cell-based constructs comprising the D1 and D2 domains of the ILT2 and ILT4 receptors, including specific amino-acid and nucleic-acid

sequences; (2) data demonstrating correct expression of various constructs; (3) methods and strategies to improve the structure, expression and efficacy of those constructs; and (4) methods for transducing those "ILT" constructs into immune cells.

75.     Invectys has invested substantial time, effort, money, and resources over many years in developing its trade secrets.  Only Invectys and those to whom Invectys discloses its trade secrets in confidence know Invectys' trade secrets.  These trade secrets are not matters of public knowledge or generally known within the industry.  The trade secrets that belong to Invectys have enabled Invectys to obtain a fair and lawful competitive advantage over those who do not know or have the right to use its trade secrets because they contain key information on competitive methods of cancer treatment.  Because the trade secret information gives Invectys a business advantage, Invectys does not disclose that information to anyone unless they have agreed to maintain that information as confidential.  The information constitutes trade secrets under Texas Civil Practice and Remedies Code section 134A.002(6).

76.     Defendants acquired Invectys' trade secrets by improper means, specifically taking proprietary information learned, in confidence, from Invectys.  Defendants also disclosed or used Invectys' trade secrets to obtain funding and apply for patent applications, among other things, without express or implied consent and knew or had reason to know that the trade secrets were obtained by improper means, acquired under circumstances giving rise to a duty to maintain their secrecy or limit their use, and/or derived from or through a person who owed Invectys a duty to maintain their secrecy or limit their use.  At the time that Simon Wain-Hobson co-founded NKILT he was in possession of Invectys' trade secrets and knew he had a duty to maintain their secrecy.  Likewise, NKILT co-founder Raphael Ognar, also a former Invectys' consultant and CEO, knew Simon Wain-Hobson was in possession of Invectys' trade secrets and knew or had reason to know

Simon Wain-Hobson had a duty to maintain their secrecy.  Despite this knowledge, Simon Wain-Hobson disclosed, and NIKLT knowingly acquired Invectys' confidential, proprietary, and trade secret information and know-how regarding: (1) cell-based constructs comprising the D1 and D2 domains of the ILT2 and ILT4 receptors, including specific amino-acid and nucleic-acid sequences; (2) data demonstrating correct expression of various constructs; (3) methods and strategies to improve the structure, expression and efficacy of those constructs; and (4) methods for transducing those "ILT" constructs into immune cells.  Furthermore, Simon Wain-Hobson and NKILT used these trade secrets to establish, obtain funding and operate NKILT's competing cancer therapeutics business in North America.

77.    Defendants have used or disclosed, and have threatened to use or disclose, Invectys' trade secrets for their own financial gain and to gain an unfair competitive business advantage in developing cancer therapeutics and obtaining funding.  This use and disclosure of Invectys' valuable trade secrets in competition with Invectys, without license or other authority, is a misappropriation of Invectys' trade secrets under TUTSA.  TEX. CIV. PRAC. & REM. CODE ANN. §134A.001–134A.008.  Defendants are well aware that this information is to remain confidential.

78.    Simon Wain-Hobson's misappropriation and disclosure of Invectys' trade secrets, as an insider with full knowledge of the information's confidential nature, was willful and intentional.  NKILT knew or should have known of Simon Wain-Hobson's improper acquisition and use of Invectys' trade secrets, not least because he co-founded the company Raphael Ognar, a former Invectys consultant and CEO.  NKILT knowingly and maliciously acquired said trade secrets for its own benefit.  Therefore, Invectys is entitled to all actual and exemplary damages resulting from this misappropriation and breach of TUTSA.

79.    Defendants' wrongful use and/or disclosure of Invectys' trade secrets occurred and continues to occur in Texas.  From its principal place of business and headquarters in Houston, Texas, NKILT acquired, used and disclosed Invectys' trade secrets by, among other things, drafting and submitting the '514 Application.  In addition, the '514 Application indicates Joseph Henri Bayle and MyLinh Duong, both of whom are listed as inventors on the '514 Application and PCT/US2023/061966, resided in Texas when the '514 Application, which discloses Invectys' trade secrets, was filed.

80.    Defendants' wrongful use and/or disclosure of Invectys' trade secrets has, and continues to, seriously damage Invectys in an amount that is not presently ascertainable.  Invectys demands that Defendants be ordered to pay all actual damages, special damages, and consequential damages.  Invectys further demands that Defendants be ordered to pay all reasonable and necessary attorneys' fees incurred by Invectys in bringing this claim.  And because of the egregious nature of Defendants' conduct, Invectys demands that they be ordered to pay exemplary damages.

**COUNT III – Correction of Inventorship under 35 U.S.C. § 256 of PCT/US2023/061966 and Related Applications and Patents (Julien Caumartin and Maria Loustau as the sole joint inventors)**

81.    Invectys incorporates by reference the preceding paragraphs in the Complaint.

82.    This cause of action is brought by Invectys against Defendants under 35 U.S.C. § 256.

83.    Julien Caumartin and Maria Loustau are the individuals who conceived the novel contributions to the claims and communicated the conception to Simon Wain-Hobson, including in materials that Simon Wain-Hobson reviewed and annotated.  They are the true inventors of the subject matter described and claimed in PCT/US2023/061966 and should accordingly be named inventors on the PCT/US2023/061966 and any applications or patents claiming priority thereto.

84.     Through omission, inadvertence, and/or error Julien Caumartin and Maria Loustau were not listed on PCT/US2023/061966 as inventors and the individuals currently listed as inventors on PCT/US2023/061966 were improperly joined.  The omission, inadvertence, and/or error occurred without any deceptive intent on the part of Julien Caumartin and Maria Loustau.

### COUNT IV – Breach of Contract – Proprietary Information

85.     Invectys incorporates by reference the preceding paragraphs in the Complaint.

86.     At all times relevant to the allegations in this action, the Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement was a valid, binding, and enforceable written agreement between Invectys and Simon Wain-Hobson that was made for valid consideration, including specialized training, continued employment and the exchange of confidential information intended to facilitate a mutually beneficial collaboration.  *See* **Ex.1**, Ex. B.

87.     Invectys fully performed its contractual duties under the Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement including by employing, training and paying Simon Wain-Hobson.

88.     Invectys shared with Simon Wain-Hobson confidential, proprietary, and trade secret information and know-how regarding: (1) cell-based constructs comprising the D1 and D2 domains of the ILT2 and ILT4 receptors, including specific amino-acid and nucleic-acid sequences; (2) data demonstrating correct expression of various constructs; (3) methods and strategies to improve the structure, expression and efficacy of those constructs; and (4) methods for transducing those "ILT" constructs into immune cells.

89.     By retaining and sharing Invectys confidential, proprietary, and trade secret information and know-how with third parties without Invectys' consent, written or otherwise, Simon Wain-Hobson has breached and continues to breach, the Proprietary Information,

Inventions Assignment, Non-Competition and Non-Solicitation Agreement. For example, Simon Wain-Hobson has filed patent applications and wrongly attracted investors to his new company, NKILT, that would have otherwise gone to Invectys, but for Simon Wain-Hobson's breaches of contract, including his misuse misuse of Invectys' confidential, proprietary, and trade secret information and know-how.

90.     As a result of Simon Wain-Hobson's breach of the Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement, Invectys has suffered damages in an amount to be proven at trial.

91.     The Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement specifically provides that Invectys is entitled to "injunction, specific performance or other equitable relief, without bond and without prejudice to any other rights and remedies that [Invectys] may have for a breach or threatened breach of this Agreement." **Ex. 1**, Ex B at § 11.1. Invectys has not yet been able to determine the full extent to which its confidential, proprietary, and trade secret materials and information have already been improperly used and/or disclosed by Simon Wain-Hobson in breach of the Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement. The Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement specifically provides that any breach or threatened breach thereof "will constitute immediate and irreparable injury." *Id.* Accordingly, as a result of Simon Wain-Hobson's ongoing misappropriation and breach of the Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement, Invectys has suffered, and will continue to suffer immediate, immeasurable, and irreparable harm unless Simon Wain-Hobson and NKILT is enjoined.

### COUNT V – Breach of Contract – Non-Competition

92.     Invectys incorporates by reference the preceding paragraphs in the Complaint.

93.     At all times relevant to the allegations in this action, the Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement was a valid, binding, and enforceable written agreement between Invectys and Simon Wain-Hobson that was made for valid consideration, including specialized training and the exchange of confidential information intended to facilitate a mutually beneficial collaboration. *See* **Ex.1**, Ex. B.

94.     Invectys fully performed its contractual duties under the Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement including by employing, training and paying Simon Wain-Hobson.

95.     By executing the Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement Simon Wain-Hobson agreed that for a period of one year after the date his engagement ended he would not "directly or indirectly, as an officer, director, employee, consultant, owner, manager, member, partner, or in any other capacity solicit, perform, or provide, or attempt to perform or provide Conflicting Services anywhere in the world where [Invectys] is conducting or is planning to conduct business, including but not limited to locations where [Invectys] performs research or development activities related to Invectys' products, services or processes." **Ex.1**, Ex. B. at § 6. Simon Wain-Hobson further agreed that he would not "assist another person to solicit, perform or provide or attempt to perform or provide Conflicting Services anywhere in the world where [Invectys] is conducting or is planning to conduct business, including but not limited to locations where [Invectys] performs research or development activities related to [Invectys'] products, services or processes." *Id.* Conflicting Services are defined by the Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement as "any product, service, or process or the research and development thereof, of any person or organization other than [Invectys] that is substantially similar to or

competitive with a product, service, or process, including the research and development thereof, of [Invectys] with which I worked directly or indirectly during my engagement by [Invectys] or about which I acquired Proprietary Information during my engagement by [Invectys]." *Id.*

96.     In violation of the Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement Simon Wain-Hobson co-founded NKILT in July of 2021, just two and a half months after the end of his consulting agreement with Invectys.

97.     As a founder and officer of NKILT Simon Wain-Hobson solicits, performs and provides services, processes or the research and development thereof, that is substantially similar to and competitive with a services, processes or the research and development thereof, with which he worked directly and indirectly during his engagement by Invectys about which he acquired Proprietary Information during his engagement by [Invectys].  For example, Simon Wain-Hobson solicits, performs and provides services as founder and officer of NKILT relating to, among other things, (1) cell-based constructs comprising the D1 and D2 domains of the ILT2 and ILT4 receptors, including specific amino-acid and nucleic-acid sequences; (2) data demonstrating correct expression of various constructs; (3) methods and strategies to improve the structure, expression and efficacy of those constructs; and (4) methods for transducing those "ILT" constructs into immune cells for the purpose of developing cancer therapeutics.

98.     As a result of Simon Wain-Hobson's breach of the Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement, Invectys has suffered damages in an amount to be proven at trial.

99.     The Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement specifically provides that Invectys is entitled to "injunction, specific performance or other equitable relief, without bond and without prejudice to any other rights and

remedies that [Invectys] may have for a breach or threatened breach of this Agreement." **Ex. 1**, Ex B at § 11.1.  Invectys has not yet been able to determine the full extent to which Simon Wain-Hobson has provided Competing Services to NKILT in breach of the Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement.  The Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement specifically provides that any breach or threatened breach thereof "will constitute immediate and irreparable injury." *Id.*  Accordingly, as a result of Simon Wain-Hobson's ongoing provision of Competing Services to NKILT and breach of the Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement, Invectys has suffered, and will continue to suffer immediate, immeasurable, and irreparable harm unless Simon Wain-Hobson and NKILT are enjoined.

### COUNT VI – Breach of Contract – Obligation to Keep Company Informed

100.    Invectys incorporates by reference the preceding paragraphs in the Complaint.

101.    At all times relevant to the allegations in this action, the Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement was a valid, binding, and enforceable written agreement between Invectys and Simon Wain-Hobson that was made for valid consideration, including specialized training and the exchange of confidential information intended to facilitate a mutually beneficial collaboration.  *See* **Ex.1**, Ex. B.

102.    Invectys fully performed its contractual duties under the Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement including by employing, training and paying Simon Wain-Hobson.

103.    By executing the Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement Simon Wain-Hobson agreed that "[d]uring the period of my engagement and for one (1) year after termination of my engagement with the

Company, I will promptly disclose to [Invectys] fully and in writing all Inventions authored, conceived or reduced to practice by me, either alone or jointly with others.  In addition, I will promptly disclose to the Company all patent applications filed by me or on my behalf within a year after termination of engagement."  **Ex.1**, Ex. B at § 2.5.  On February 4, 2022, less than one year after the termination of Simon Wain-Hobson's consulting agreement, NKILT filed the '514 Application with the USPTO, listing Joseph Henri Bayle, Simon Wain-Hobson, Raphael Ognar and Duong MyLin as the purported inventors.  At no point did NKILT or Simon Wain-Hobson disclose the '514 Application to Invectys, despite the application listing Simon Wain-Hobson as a purported inventor.  Accordingly, Simon Wain-Hobson breached the Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement by failing to comply with his obligations to keep Invectys informed.

104.    As a result of Simon Wain-Hobson's breach of the Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement, Invectys has suffered damages in an amount to be proven at trial.

105.    The Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement specifically provides that Invectys is entitled to "injunction, specific performance or other equitable relief, without bond and without prejudice to any other rights and remedies that [Invectys] may have for a breach or threatened breach of this Agreement."  **Ex. 1**, Ex B at § 11.1.  Invectys has not yet been able to determine whether Simon Wain-Hobson has filed any additional provisional patent applications in breach of the Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement.  The Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement specifically provides that any breach or threatened breach thereof "will constitute immediate and irreparable injury."

*Id.* Accordingly, as a result of Simon Wain-Hobson's failure to disclose the '514 Application and breach of the Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement, Invectys has suffered, and will continue to suffer immediate, immeasurable, and irreparable harm unless Simon Wain-Hobson and NKILT are enjoined.

### COUNT VI – Breach of Contract – No Solicitation

106.    Invectys incorporates by reference the preceding paragraphs in the Complaint.

107.    At all times relevant to the allegations in this action, the Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement was a valid, binding, and enforceable written agreement between Invectys and Simon Wain-Hobson that was made for valid consideration, including specialized training and the exchange of confidential information intended to facilitate a mutually beneficial collaboration. *See* **Ex.1**, Ex. B.

108.    Invectys fully performed its contractual duties under the Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement including by employing, training and paying Simon Wain-Hobson.

109.    By executing the Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement Simon Wain-Hobson agreed that during the period of his engagement and for the one-year period after the date the engagement ends for any reason he would not:

> [A]s an officer, director, employee, consultant, owner, partner, or in any other capacity, either directly or through others, except on behalf of the [Invectys]:
>
> 5.1  solicit, induce, encourage, or participate in soliciting, inducing, or encouraging any employee of [Invectys] to terminate his or her relationship with [Invectys];
>
> 5.2  hire, engage, or engage in business with or attempt to hire, engage, or engage in business with any person employed by [Invectys] or who has left the engagement of [Invectys] within the

> preceding three (3) months of any such prohibited activity or discuss any potential engagement or business association with such person, even if I did not initiate the discussion or seek out the contact;

**Ex.1**, Ex. B at § 5.

110.    In direct violation of the Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement, while still an Invectys consultant, Simon Wain-Hobson began planning the formation of his new company with Raphael Ognar.  Ognar was, at the time, acting president and Chief Executive Officer of Invectys USA Inc., and plainly an "employee" of the company that Wain-Hobson was barred from soliciting.  In July of 2021, two and a half months after the end of his consulting agreement with Invectys, Simon Wain-Hobson co-founded NKILT with Raphael Ognar.

111.    The Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement specifically provides that Invectys is entitled to "injunction, specific performance or other equitable relief, without bond and without prejudice to any other rights and remedies that [Invectys] may have for a breach or threatened breach of this Agreement."  **Ex. 1**, Ex B at § 11.1.  The Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement specifically provides that any breach or threatened breach thereof "will constitute immediate and irreparable injury."  *Id.*  Accordingly, as a result of Simon Wain-Hobson's solicitation and inducement of Raphael Ognar and breach of the Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement, Invectys has suffered, and will continue to suffer immediate, immeasurable, and irreparable harm.

## VI.    JURY DEMAND

Invectys demands a trial by jury as to all claims and issues that may be tried to a jury.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Invectys respectfully requests that this Court:

1.      Enter judgment in Invectys' favor on each Count set forth in this Complaint;

2.      Order the United States Patent and Trademark Office to correct the inventorship of PCT/US2023/061966 to name Julien Caumartin and Maria Loustau as the inventors of PCT/US2023/061966.

3.      Alternatively, order NKILT to sign the requisite documents to correct inventorship of PCT/US2023/061966 to name Julien Caumartin and Maria Loustau as the inventors of PCT/US2023/061966.

4.      Issue a declaratory judgment naming Julien Caumartin and Maria Loustau as the inventors of PCT/US2023/061966 and providing that Caumartin and Loustau assigned the invention to Invectys.

5.      Pursuant to 28 U.S.C. § 2202, issue any injunctions necessary to enforce the declaratory judgment naming Julien Caumartin and Maria Loustau as the inventors of PCT/US2023/061966, and Invectys as the owner of the invention.

6.      Order a constructive trust over all information, patent applications, patents, technology, products, and other materials in the possession, custody, or control of Defendants that wrongfully constitute, contain, were based on, and/or derived in whole or in part from the use of Plaintiffs' intellectual property, and an order that Defendants immediately transfer to Plaintiffs all right, title, and interest in such information, patent applications, patents, material, technology, and products;

7.      Award Invectys damages in an amount to be proven at trial, caused by Defendants' unlawful conduct, or, in the alternative, restitution for unjust enrichment;

8.    Award Invectys double and/or punitive damages as permitted by applicable law, including, but not limited to, the DTSA, the TUTSA, and various actions at common law;

9.    Issue injunctive relief as to Invectys including but not limited to the following:

    a.    An order enjoining Defendants from any use of the confidential, proprietary or trade secret information for any purpose, including but not limited to, the acquisition or prosecution of intellectual property, the solicitation of investment capital, and the promotion or sale of any product NKILT is developing or manufacturing that reflects, embodies or incorporates Invectys' confidential, proprietary, or trade secret information;

    b.    An order enjoining Defendants from retaining, using or disclosing Invectys' confidential, proprietary, or trade secret information;

    c.    Any such other equitable relief this Court deems fair and appropriate;

10.    Payment of attorneys' fees and costs, as permitted by applicable law, including, but not limited to, the DTSA, the TUTSA, and various actions at common law;

11.    Repayment of costs; and

12.    Any other relief, legal or equitable, this Court deems appropriate.

Dated:  November 22, 2023

COOLEY LLP

*/s/ Matthew D. Caplan*
Matthew D. Caplan (*pro hac vice forthcoming*)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
(415) 693-2000
mcaplan@cooley.com

Adam Gershenson (*pro hac vice forthcoming*)
Cooley LLP
500 Boylston Street
14th Floor
Boston, MA  02116-3736
(617) 937-2300
agershenson@cooley.com

Bonnie Fletcher Price (*pro hac vice forthcoming*)
Cooley LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004-2400
(202) 842-7800
bfletcherprice@cooley.com

*Attorneys for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that this document(s) filed through the CM/ECF system will be sent by

first class mail to those indicated as non-registered participants, on November 22, 2023.


/s/ *Matthew D. Caplan*
Matthew D. Caplan